## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>YOLONDA M. SCOTT,<br>*aka* Yolonda M. Washington-Evans,<br>*aka* Yolonda M. Evans,<br>*aka* Yolonda M. Martin,<br>*aka* Yolonda M. Washington,<br><br>        Debtor. | Case No. 25-40186-357<br><br>Chapter 7 |
| ALL STAR COLLISION, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>YOLONDA M. SCOTT,<br><br>        Defendant. | Adv. Proc. No. 25-04008-357 |

### MEMORANDUM OPINION

      In this adversary proceeding, Plaintiff All Star Collision, LLC ("All Star") seeks a determination that a certain debt of Debtor Yolonda M. Scott is excepted from discharge under Sections 523(a)(2)(A) and 523(a)(2)(B) of the Bankruptcy Code.

      In the accompanying Findings of Fact and Conclusions of Law, I discuss the facts in greater detail. In this Opinion, I consider only whether and in what circumstances an ultimately dishonored check can give rise to a debt that is excepted from discharge because of a false representation or actual fraud under Section 523(a)(2)(A) or a false statement of financial condition actionable pursuant to Section 523(a)(2)(B).

      For the following reasons, I conclude that a debtor's tender of a check, without more, is not a false representation under Section 523(a)(2)(A), or a false statement of a debtor's financial condition under Section 523(a)(2)(B), even if the debtor knows or intends that the

check will not be honored. Under the right circumstances, however, the tender of a worthless check may constitute actual fraud.

I.    **Background**

In the fall of 2022, All Star repaired the Debtor's vehicle and charged her $5,418.78 for this service. On November 2, 2022, the Debtor picked up her vehicle from All Star and paid for the full cost of the repairs with a personal check. An All Star representative testified at trial that, at the time the Debtor tendered the check, there was no indication that the check was not valid or would otherwise not be honored by the Debtor's bank. The check was not certified, however, and there was no evidence of any affirmative representation that the check would be honored.

On November 9, 2022, All Star was notified that the Debtor had placed a stop-payment order on the check. All Star has never been paid for the services it provided to the Debtor, and it lost the benefit of its possessory lien securing its claim. The evidence showed that when the Debtor provided the check to All Star, she did not intend to have her bank honor the check.

II.   **Analysis**

A.    **Section 523(a)(2)(A) (Count I)**

In Count I, All Star seeks a determination that the debt owed to it by the Debtor is excepted from discharge under Section 523(a)(2)(A). This section excepts from discharge a debt for property or services that were obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

1.    False representation

To prevail on a theory of false representation, All Star must prove that the Debtor "(1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving [All Star], (4) who justifiably relied on the representation, and which (5) proximately caused [All Star] damage." *In re Hernandez*, 860 F.3d 591, 602 (8th Cir. 2017).

The courts disagree about whether a debtor's payment with a check that is later dishonored can be an actionable false representation under Section 523(a)(2)(A). *Compare In re Marsh*, 449 B.R. 431, 437 (Bankr. N.D. Ga. 2011) ("The use of an invalid document, such as a bad check to obtain money or property, constitutes a false representation."), *and In re Miller,* 112 B.R. 937, 940 (Bankr. N.D. Ind. 1989) ("The delivery of a check carries with it the implied, if not the actual, representation that it will be honored by the bank upon which it is

drawn or that there are sufficient funds in the account with which to pay the check."), *with In re Trevisan*, 300 B.R. 708, 716 (Bankr. E.D. Wis. 2003) ("Presentation of an NSF check alone simply does not constitute nondischargeable false representation."), *and In re Philopulos*, 313 B.R. 271, 281 (Bankr. N.D. Ill. 2004) ("In order to establish a false representation, [the creditor] must prove that the debtor made an express representation that funds are available to satisfy the check.").

Several of my predecessors have addressed this issue and determined that a check can be a false representation if some additional factor is present. *See In re Tuggle*, 86 B.R. 612, 615 (Bankr. E.D. Mo. 1988) ("Accordingly, this Court adopts the position that delivery of an ultimately-dishonored check, *without more* does not constitute an actionable representation under § 523(a)(2)(A).") (footnote omitted); *In re Judge*, 99 B.R. 944, 946 (Bankr. E.D. Mo. 1989) (similar); *In re Newell*, 164 B.R. 992, 995 (Bankr. E.D. Mo. 1994) (agreeing with *Tuggle* and noting that "when surrounding circumstances indicate that a debtor intended to deceive a creditor when issuing an insufficient funds check, and when a debtor knew that sufficient funds did not exist, a debtor is not entitled to a discharge of the debt"). More recently, Judge Surratt-States determined that debtors made a false representation that they would pay the total outstanding debt when they provided a creditor with a check, knowing that their bank account did not and would not have sufficient funds to cover the check. *See In re Callahan*, 457 B.R. 25, 28 (Bankr. E.D. Mo. 2011). This debt thus was excepted from the debtors' discharge. *Id*.

I agree that delivery of a bad check, without more, is not a false representation. In fact, the delivery of a check is not a representation at all. *See Williams v. United States*, 458 U.S. 279, 284-85 (1982); *In re Wilson*, 613 B.R. 907, 924 (Bankr. S.D. Ohio 2020). That means that a creditor cannot prevail on a false-representation theory unless the debtor makes an additional representation, such as an assurance that soon there will be sufficient funds in the account. *See Tuggle*, 86 B.R. at 615. But it is not enough that the debtor knows or believes that there will not be sufficient funds in the account when the check is presented to the drawee bank, or even that the debtor intends to stop payment after receiving the goods or services. Those facts make the debtor's behavior more egregious, but they are not representations any more than the check itself is.

Moreover, even if it were appropriate to construe a check as involving an implicit representation, that representation would relate to the debtor's financial condition. For example, the government argued in *Williams* that "a drawer is generally understood to represent that he currently has funds on deposit sufficient to cover the face value of the check." 458 U.S. at 285 (cleaned up). That is a representation concerning the debtor's bank balance, and the Supreme Court has held that "a statement about a single asset can be a 'statement

respecting the debtor's financial condition.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 725 (2018). Such a statement is actionable only if it is in writing. *See id.* at 715; 11 U.S.C. § 523(a)(2)(B).

Because All Star did not establish that the Debtor made a representation, oral or written, beyond the mere delivery of the check, it did not prove that the Debtor made a false representation.

### 2. Actual fraud

Congress added "actual fraud" as an alternative ground for excepting a debt from discharge when it enacted the Bankruptcy Code in 1978. *See Husky International Electronics, Inc. v. Ritz*, 578 U.S. 355, 359 (2016). The Court held in *Husky* that "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* at 360. A creditor may prevail on an actual-fraud theory even though the debtor did not make a false representation. *Id.* at 359. The creditor also need not show reliance if the fraud is not premised on a misrepresentation. *Id.* at 365-66.

Before *Husky*, the Eighth Circuit applied the five-element test discussed above to all Section 523(a)(2)(A) cases, whether the plaintiff's theory was false pretenses, false representation, or actual fraud. *See, e.g.*, *In re Treadwell*, 637 F.3d 855, 860 (8th Cir. 2011); *Hernandez*, 860 F.3d at 602 n.6 (referring to "our standard § 523(a)(2)(A) elements"). In *Hernandez*, the court recognized that *Husky* might require a different approach in actual-fraud cases, but the question was not directly presented in *Hernandez*, which involved a false representation. *See Hernandez*, 860 F.3d at 602 n.6. It is presented here, though.

Because the five standard elements include a representation by the debtor and reliance by the creditor, while *Husky* says that neither is required for a claim of actual fraud, a modification is necessary. *See* 4 *Collier on Bankruptcy* ¶ 523.08[1][e] (16th ed. 2025) ("In light of the varied conduct that may be characterized as actual fraud, all of the elements of a nondischargeability claim for false representations are not necessarily applicable to a nondischargeability claim for actual fraud under section 523(a)(2)(A)."). I therefore conclude that a creditor may prevail on an actual-fraud theory under Section 523(a)(2)(A) by establishing (1) an act or omission that counts as "fraud," (2) that involves moral turpitude or intentional wrong, (3) for which the debtor is legally responsible, and (4) that proximately causes harm to the creditor. *See Husky*, 578 U.S. at 359-60, 365-66; *In re Wigley*, 15 F.4th 1208, 1211 (8th Cir. 2021) (applying *Husky* to a similar fact pattern); *Neal v. Clark*, 95 U.S. 704, 709 (1877) (distinguishing positive fraud from implied fraud); *Bartenwerfer v. Buckley*, 598 U.S. 69, 83 (2023) (discussing secondary liability for fraud committed by another).

The third and fourth elements require no further discussion in the circumstances of this case. I will address the first two in greater detail.

First, fraud "connotes deception or trickery generally, [but] is difficult to define more precisely." *Husky*, 578 U.S. at 360. "Actual fraud consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 4 *Collier on Bankruptcy* ¶ 523.08[1][e] (16th ed. 2025). *See also In re Moen*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (adopting this definition).

Passing a bad check, knowing that it will not be honored, to obtain goods or services from another qualifies as fraud under this definition. *See, e.g.*, Model Penal Code § 224.5 (Am. L. Inst. 1985) (classifying this behavior as a misdemeanor); Annotation, *Construction, Application, and Effect of Criminal Statutes Directed Specifically Against Use of Worthless, False, or Bogus Check or Draft*, 35 A.L.R. 375 (1925) (discussing "statutes specifically punishing the drawing or passing of worthless, false, or bogus checks or drafts as a means of fraudulently obtaining another's money or property"); *In re Stangel*, 593 B.R. 607, 613 (Bankr. E.D. Wis. 2018) (stating that tendering worthless check with actual, subjective intent not to pay is actual fraud); *In re Fitzgerald*, 109 B.R. 893, 900-01 (Bankr. N.D. Ind. 1989) (concluding that debtor who tendered bad check for auto repairs, with no intention to pay, and also stopped payment on check, engaged in fraud).[1]

Second, the Debtor's actions were intentionally wrongful. "Merely stopping payment on a check is not sufficient evidence of an intent to deceive . . . ." *In re Fontana*, 92 B.R. 559, 561 (Bankr. M.D. Ga. 1988). Neither is the fact that a debtor's check is returned for insufficient funds; that may happen for reasons that do not involve moral turpitude, including an honest mistake by the debtor or garnishment of a checking account by another creditor. *Cf. Dolic v. Barr*, 916 F.3d 680, 686 (8th Cir. 2019) (passing a bad check with the purpose to defraud is a crime involving moral turpitude).

Consistent with general principles of fraud, the relevant question is whether the drawer intended when she tendered the check that the payee would not receive payment. *See generally* Restatement (Second) of Torts § 530 (1977) ("A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."); *In re Freier*, 604 F.3d 583, 588 (8th Cir. 2010) ("A material promise to perform in the future made with the intent to defraud and without the intent to perform constitutes actionable fraud.")

---

[1] Section 523(a)(2)(A) incorporates the general common law of torts, not the law of any particular state. *See Field v. Mans*, 516 U.S. 59, 70 n.9 (1995).

(cleaned up); *Paul v. Farmland Industries, Inc.*, 37 F.3d 1274, 1277 (8th Cir. 1994) ("It is not enough that for any reason, good or bad, the speaker changes his mind and fails or refuses to carry his expressed intention into effect."); *Steinberg v. Chicago Medical School*, 371 N.E.2d 634, 641 (Ill. 1977) ("We concede the general rule denies recovery for fraud based on a false representation of intention or future conduct, but there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud."). As discussed above, the facts show that when the Debtor tendered the check to All Star, she did not intend for her bank to honor it.

Because All Star has established that the Debtor engaged in actual fraud by paying for repairs with a check that she intended to be dishonored, its claim is excepted from discharge under Section 523(a)(2)(A).

### B. Section 523(a)(2)(B) (Count II)

In Count II, All Star seeks a determination that the debt owed to it by the Debtor is excepted from her discharge under Section 523(a)(2)(B). That section applies when a debtor obtains property or services through the

> use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor . . . reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

The question here is whether an ultimately dishonored check drawn by a debtor may qualify as a false written statement about her financial condition. "A statement is the act or process of stating, reciting, or presenting orally or on paper; something stated as a report or narrative; a single declaration or remark." *Lamar*, 584 U.S. at 716 (cleaned up).

A check itself does not make a statement or declaration. "Checks are not statements supplying information but are negotiable instruments . . . which evidence debt." *In re Lahiri*, 225 B.R. 582, 590 (Bankr. E.D. Pa. 1998); *see also Fontana*, 92 B.R. at 562 ("A negotiable instrument is an unconditional promise to pay a sum certain. Thus, a check is evidence of a debt, not a statement of one's financial condition."); *In re Leibold*, No. 23-3022, 2025 WL 1005669, at *6 (Bankr. N.D. Ohio Mar. 31, 2025) (a check is not "a statement of any kind, and thus cannot be construed as a statement regarding the Debtor-Defendant's financial condition"). A check is a mechanism of payment, not a statement that a debtor has sufficient

assets to make the check good.[2] I thus conclude that a check is not a statement in writing under Section 523(a)(2)(B).

Thus, All Star did not prove that its debt should be excepted from discharge under Section 523(a)(2)(B).

### III.   Conclusion

The Debtor provided All Star with a check with the intent that it would not be honored by her bank. Her debt to All Star is thus excepted from discharge under Section 523(a)(2)(A). The check, however, was not a false written statement about the Debtor's financial condition, so All Star's argument under Section 523(a)(2)(B) is not viable.

Dated: September 4, 2025
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

---

[2] As discussed above, even if we generally understand that an honest person does not write a check that exceeds the funds she currently has on deposit or expects to have on deposit within a few business days, that understanding is not reflected in any written statement on the check itself, unless the check is certified. *See generally* U.C.C. § 3-409 (2022).